UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Salwillel W.T. Fields

   v.                                         Case No. 15-cv-374-LM

E.L. Tatum, Warden, Federal
Correctional Institution,
Berlin, New Hampshire


**REPORT AND RECOMMENDATION**

Salwillel Fields, who appears pro se, is an inmate in the Federal Correctional Institution in Berlin, New Hampshire. Pursuant to 28 U.S.C. § 2241, he petitions for a writ of habeas corpus, claiming that the federal Bureau of Prisons ("BOP") has unlawfully failed to give him credit toward his federal sentence for approximately 61 months of incarceration by the State of Tennessee. Before this magistrate judge for a report and recommendation is respondent's motion for summary judgment. Petitioner objects. For the reasons that follow, respondent's motion should be granted.


**Summary Judgment Standard**

"Summary judgment is appropriate when the record shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Walker v.

President & Fellows of Harvard Coll., 840 F.3d 57, 61 (1st Cir. 2016) (quoting Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011); citing Fed. R. Civ. P. 56(a)).  "A genuine issue is one that can 'be resolved in favor of either party.'"  Id. (quoting Gerald v. Univ. of P.R., 707 F.3d 7, 16 (1st Cir. 2013); citing Pérez-Cordero v. Wal-Mart P.R., Inc., 656 F.3d 19, 25 (1st Cir. 2011)).

When a court considers a motion for summary judgment, "[t]he evidence . . . must be viewed in the light most favorable to the nonmoving party . . . and all reasonable inferences must be taken in that party's favor."  Harris v. Scarcelli (In re Oak Knoll Assocs., L.P.), 835 F.3d 24, 29 (1st Cir. 2016) (citing Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 763 (1st Cir. 1994)).  But, at summary judgment, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Burns v. Johnson, 829 F.3d 1, 8 (1st Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 (1986)).

To defeat summary judgment, "[t]he non-moving party . . . must 'produc[e] specific facts sufficient to deflect the swing of the summary judgment scythe.'"  Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016) (quoting Mulvihill

v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003)). Thus, the court is free to "ignor[e] conclusory allegations, improbable inferences, and unsupported speculation." Young v. Wells Fargo Bank, N.A., 828 F.3d 26, 31 (1st Cir. 2016) (quoting Walsh v. TelTech Sys., Inc., 821 F.3d 155, 159-60 (1st Cir. 2016)).

## Background

Except as otherwise indicated, the facts recited in this section are undisputed.

On February 28, 2005, Fields was arrested by officers of the Bowie County, Texas, Sheriff's Department. His arrest resulted from an investigation undertaken at the request of the Clarksville, Tennessee, Police Department ("CPD"). The CPD, in turn, had asked the Texas Rangers for help in locating Fields and his wife, who were facing outstanding warrants in Tennessee for drug and weapons charges. After he was arrested by the Bowie County Sheriff's Department, Fields was sent to the Montgomery County Jail in Tennessee. On June 23, 2005, he was released on bond.

In his petition, which he verified in accordance with 28 U.S.C. § 1746(2), Fields asserts that on May 10, 2006, he was both: (1) charged in the Eastern District of Texas with two

federal crimes;[1] and (2) "received into official federal custody," doc. no. 1, at 5.[2]  He further states, without specifying a date, that "the United States Marshals [Service] was the first to arrest [him] and charge him with drug and firearm offenses, and it did not relinquish primary custody over him at all."  Pet. (doc. no. 1), at 6.  For his part, respondent has produced a prisoner tracking document created by the U.S. Marshals Service ("USMS") indicating that Fields was arrested by the USMS on September 6, 2006, in Montgomery County, Tennessee.

Be that as it may, it is undisputed that on May 21, 2006, after he had been out on bail in Tennessee for almost a year, Fields was booked back into the Montgomery County Jail to await trial on his state charges.  On August 21, 2006, while Fields was being held in Tennessee, he was indicted in the U.S. District Court for the Eastern District of Texas on four counts, including violations of 18 U.S.C. § 922(g)(1) (prohibited person in possession of a firearm) and 21 U.S.C. § 841(a)(1) (possession with intent to distribute cocaine base).  Those indictments were based upon conduct in Bowie County, Texas, in February of 2005.

---

[1] He does not indicate how, precisely, he was charged.

[2] He does not indicate how, precisely, he was taken into federal custody on that date.

4

On September 6, 2006, the Tennessee jail handed Fields over to the USMS, pursuant to a Writ of Habeas Corpus Prosequendum issued by the U.S. District Court for the Eastern District of Texas.  The writ concludes by directing the USMS "to return [Fields] to the custody of [the] Warden/Sheriff [of the Montgomery County Jail] . . . at the conclusion of all of said proceedings hereafter ordered by this Court."  Resp't's Resp., Ex. A, Kitka Decl., Attach. 4 (doc. no. 10-4), at 2.

On April 6, 2009, in the Eastern District of Texas, two of the four federal charges against Fields were dismissed, and he pled guilty to the other two.  The judgment in Fields's federal criminal case provides, in pertinent part:

> [T]he defendant, Salwillel Fields, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 240 months on Count 2 and [a] term[] of 120 months on Count 1, all to be served concurrently.  The defendant shall receive credit for time served beginning on 9/6/06.

Kitka Decl., Attach. 5 (doc. no. 10-5), at 3.  In his petition, Fields states that "[t]he Criminal Judgment [in his federal case] specifically stated that he was to be committed back to the BOP's custo[]dy, and that he should have not been placed in a state correctional institution in Tennessee."  Doc. no. 1, at 5 (emphasis added).  However, the federal judgment did not prohibit the BOP from returning Fields to the custody of the State of Tennessee.  And, as the court has noted, the Writ of

Habeas Corpus ad Prosequendum that had been issued by the same federal court that sentenced Fields specifically directed the USMS to return him to the Montgomery County Jail in Tennessee at the conclusion of his federal trial in the Eastern District of Texas.

Three days after Fields was sentenced in federal court, i.e., on April 9, 2009, he was returned to the Montgomery County Jail.  In his petition, Fields claims that between April 6, 2009, and May 15, 2014, he "was only secondarily in state custody pursuant to a writ of habeas corpus ad prosequendum for his appearance in the State Criminal Case."  Pet. (doc. no. 1), at 6.³  While Fields makes the foregoing averment, he has not produced the writ to which he refers, and the only such writ in the record is the one issued by the federal court in the Eastern District of Texas which secured Fields's appearance for trial in that forum.

---

³ Earlier in his petition, Fields provides the following elaboration:

> April 6, 2009: The Circuit Court of Montgomery County, in the State of Tennessee filed a writ of habeas corpus ad prosequendem [sic] for Fields initial appearance in State Court under Indictment # 40500194 in the 19th Judicial Court, Division III, for the charge of Possession w/i to sell over 300 grams [of a Schedule II controlled drug].

Pet. (doc. no. 1), at 2 (emphasis omitted).

Leaving aside the legal mechanics of Fields's transfer to Tennessee after his federal trial in the Eastern District of Texas, it is undisputed that after he was sent back to Tennessee, he pled guilty in state court to possession with intent to sell over 300 grams of a Schedule II controlled drug and was sentenced to 38 years in the custody of the Tennessee Department of Corrections.  The sentencing judge also directed that Fields's sentence was to run concurrently with the federal sentence he had received in the Eastern District of Texas. Fields was incarcerated in Tennessee until May 14, 2014, when he was paroled.

Upon his parole, Fields was turned over to the USMS.  He has been in federal custody ever since.  When Fields was taken into federal custody in 2014, the BOP credited him with 945 days of prior credit time, which included February 28, 2005, and the 944 days from September 6, 2006, through April 6, 2009.

Once in the custody of the BOP, Fields used the administrative process available to him to seek additional credit toward his federal sentence.  Specifically, he asked the BOP to exercise its authority, under 18 U.S.C. § 3621(b), to designate the state correctional facilities where he had been incarcerated in Tennessee as places where he had served the federal sentence that was imposed in the Eastern District of

7

Texas.  At all levels of the administrative process, Fields's request was denied.  This action followed.

## Discussion

"[W]hen an inmate wants to challenge or clarify the amount of credit for time served, the inmate must seek an administrative remedy before the Bureau of Prisons, and the administrative determination [is] subject to review through a section 2241 petition."  Stebbins v. United States, Nos. 1:10-cr-00077-JAW & 1:14-cv-00368-JAW, 2015 WL 5022023, at *4 (D. Me. Aug. 24, 2015) (citing United States v. Stebbins, 523 F. App'x 1, 4 (1st Cir. 2013)).  It is undisputed that Fields has exhausted the administrative remedies provided by the BOP.

In his petition, Fields claims that the BOP erred by failing to give him credit toward his federal sentence for the time he spent in state custody between April 6, 2009, and May 15, 2014.  According to Fields, he is entitled to credit for that time either under the doctrine of primary jurisdiction or under the provisions of 18 U.S.C. § 3621(b).  Respondent disagrees, categorically.  The court begins with primary jurisdiction and then turns to petitioners' statutory claim.

**A.   Primary Jurisdiction**

Petitioner first contends that because "the Federal

Authorities had primary jurisdiction [over him] when he was indicted, found guilty and sentenced from the dates of May 10, 2006 until he was sentenced . . . on April 6, 2009," Pet. (doc. no. 1), at 3, and because he was "borrowed" by the State of Tennessee from the United States to stand trial on his state charges, all the time he spent in state custody after May 10, 2006, should have been credited toward the federal sentence he received on April 6, 2009. Respondent argues that petitioner's claim fails because the United States never had primary jurisdiction over him.

Under the doctrine of primary jurisdiction, "[t]he first sovereign to take physical custody of a defendant retains 'primary jurisdiction' until releasing that jurisdiction." Elwell v. Fisher, 716 F.3d 477, 481 (8th Cir. 2013) (citing United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005)).[4] Moreover, "[a] defendant sentenced by both a state and federal sovereign will first serve the sentence of the sovereign with primary jurisdiction." Thomas v. Warden, Fed. Corr. Inst., Berlin, N.H., No. 13-cv-259-LM, 2015 WL 502144, at *4 (D.N.H. Feb. 5, 2015) (citing United States v. Warren, 610 F.2d 680, 684

---

[4] Because primary jurisdiction rests with the sovereign that first takes physical custody of a defendant, see Elwell, 716 F.3d at 481, Fields's apparent claim that the United States established primary jurisdiction over him by indicting him, see Pet. (doc. no. 3), at 3, is legally incorrect.

(9th Cir. 1980)). As for how a person who has been charged with crimes in both federal and state courts moves from forum to forum, Judge Smith explained:

> The writ of habeas corpus ad prosequendum is issued by a requesting jurisdiction seeking to have a prisoner in another jurisdiction produced to the requesting jurisdiction to stand trial. United States v. Lewis, 732 F.3d 6, 15 (1st Cir. 2013). The requesting jurisdiction does not take the prisoner into custody, because he is already in custody; rather, it is directed to the individual's custodian. Id. The custodian does not relinquish primary jurisdiction over the prisoner — instead, he is, in effect, "borrowed" by the requesting jurisdiction. Smart v. Warden, No. 13-cv-375-SM, 2014 WL 2940871, at *3 (D.N.H. June 30, 2014).

Murphy v. Central Falls Det. Facility Corp., No. C.A. 14-203 S, 2015 WL 1969178, at *4 (D.R.I. Apr. 30, 2015). Finally, "a sovereign can only relinquish primary jurisdiction in one of four ways: 1) release on bail, 2) dismissal of charges, 3) parole, or 4) expiration of sentence." Elwell, 716 F.3d at 481.

In support of his motion for summary judgment, respondent has produced evidence that Fields was booked into a county jail in Tennessee on May 21, 2006, which established physical custody over Fields by the State of Tennessee as of that date. See Elwell, 716 F.3d at 481. Respondent has also produced: (1) a USMS prisoner tracking document that lists no arrest of Fields by the USMS in May of 2006, but does indicate that he was arrested by the USMS in Tennessee on September 6, 2006; and (2)

the writ issued by the U.S. District Court for the Eastern District of Texas, which treated Fields as being under the primary jurisdiction of the State of Tennessee, and sought to "borrow" him so that he could stand trial in federal court in Texas. In support of his objection to summary judgment, petitioner has produced no evidence regarding his alleged arrest by the USMS in May of 2006, to augment the allegations in his verified petition. Indeed, he appears to have abandoned his primary jurisdiction argument entirely, focusing, instead, on his argument under 18 U.S.C. § 3621(b).

While Fields's petition does refer to an arrest by the USMS, and such an arrest, if it took place before May 21, 2006, could establish that the United States had primary jurisdiction over Fields from that point onward, petitioner's reference to an arrest is insufficient to create a question of fact that could be resolved in his favor by a reasonable jury. It is not this court's function, at summary judgment, to weigh the evidence. See Burns, 829 F.3d at 8. But still, the court must "determine whether there is a genuine issue for trial," id., and here, there is not.

Prisoner tracking records maintained by the USMS, the law enforcement agency that petitioner says arrested him, list several arrests of Fields, but none in May of 2006. And the

undisputed fact that the United States petitioned for a writ of habeas corpus ad prosequendum to retrieve Fields from the State of Tennessee so he could stand trial in the Eastern District of Texas is diametrically inconsistent with Fields's allegation that he had been arrested by the USMS before he was taken into custody by Tennessee authorities; if Fields was in the custody of the USMS, the United States would not have needed a writ of habeas corpus to retrieve him from Tennessee for his federal trial.[5]

In short, in the face of the evidence that respondent has produced in support of his motion for summary judgment, Fields's averment that he was arrested by the USMS before he was booked into the Montgomery County Jail in Tennessee on May 21, 2006, is nothing more than a conclusory allegation or an unsupported speculation. See Young, 828 F.3d at 31. As such, that averment is insufficient to create a genuine issue of material fact with respect to which sovereign, Tennessee or the United States, had primary jurisdiction over Fields. See Walker, 840 F.3d at 61 (explaining that "[a] genuine issue is one that can be resolved

---

[5] And, conversely, if Fields had been taken into custody by the USMS on May 10, 2006, it is difficult to see how he could have been booked into the Montgomery County Jail on May 21 without some formal relinquishment of custody by the USMS, and the prisoner tracking records produced by respondent disclose no act of relinquishment by the USMS.

in favor of either party") (internal quotation marks and citation omitted).  Accordingly, as to petitioner's claim that the BOP has miscalculated his sentence because the United States acquired primary jurisdiction over him before the State of Tennessee took him into custody on May 21, 2006, respondent is entitled to judgment as a matter of law.

**B.   18 U.S.C. § 3621(b)**

Petitioner's second argument is that even if the United States did not gain jurisdiction over him until May 15, 2014, the BOP abused its discretion by failing to make a nunc pro tunc determination that he began to serve his federal sentence on April 6, 2009.

Under federal law, "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served."  18 U.S.C. § 3585(a). In other words, "[a] federal sentence is deemed to have commenced on the date a defendant is received into federal custody."  Sweat v. Grondolsky, 898 F. Supp. 2d 347, 351 (D. Mass. Oct. 15, 2012) (quoting Ysabel v. Sabol, 645 F. Supp. 2d 37, 39 (D. Mass. 2009)).  Fields was paroled from his Tennessee sentence and taken into custody by the USMS on May 14, 2014. Thus, he began serving his federal sentence on that day.

However, federal law also provides that "[w]hen a federal court imposes a sentence on a defendant [such as Fields] who is already in state custody, the federal sentence may commence if and when the Attorney General or the Bureau [of Prisons] agrees to designate the state facility for the service of the federal sentence." Sweat, 898 F. Supp. 2d at 351 (quoting United States v. Smith, 812 F. Supp. 368, 370 (E.D.N.Y. 1993)).  That is, pursuant to 18 U.S.C. § 3621(b), time that Fields served in state custody after his federal conviction could have been "credited nunc pro tunc (i.e., may [have been] deemed to have run concurrently against his federal sentence) if the BOP [had chosen] to designate the state institution [in Tennessee] for service of [Fields's] federal sentence." Ysabel, 645 F. Supp. 2d at 39 (citing Barden v. Keohane, 921 F.2d 476, 480 (3d Cir. 1990)).

Not only does 18 U.S.C. § 3621(b) give the BOP discretion to give federal inmates retroactive credit for time served in state penal institutions by granting nunc pro tunc designations to such institutions, the statute also sets out the factors the BOP must consider when responding to a request for nunc pro tunc designation.  Those factors are:

**(1)** the resources of the facility contemplated;

**(2)** the nature and circumstances of the offense;

>    **(3)** the history and characteristics of the prisoner;
>
>    **(4)** any statement by the court that imposed the sentence--
>
>    **(A)** concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>
>    **(B)** recommending a type of penal or correctional facility as appropriate; and
>
>    **(5)** any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

18 U.S.C. § 3621(b).  With respect to the fifth factor,

> [t]he BOP has adopted Program Statement 5160.03 which provides that a designation of a state institution for concurrent service of a federal sentence shall be made "only when it is consistent with the intent of the federal sentencing court or the goals of the criminal justice system."

Ysabel, 645 F. Supp. 2d at 39.

Finally, "[j]udicial review of the BOP's decision to grant a nunc pro tunc designation of a state facility for service of a federal sentence is limited to abuse of discretion."  Ysabel, 645 F. Supp. 2d at 39 (citing Fegans v. United States, 506 F.3d 1101, 1105 (8th Cir. 2007); Taylor v. Sawyer, 284 F.3d 1143, 1149 (9th Cir. 2002)).  As the court of appeals explained in Taylor, a court reviewing a BOP decision on nunc pro tunc designation "cannot lightly second guess a deliberate and informed determination by the agency charged with administering federal prison policy."  284 F.3d at 1149 (citing McCarthy v.

Doe, 146 F.3d 118, 123 (2d Cir. 1998) (explaining that abuse of discretion standard merely requires that BOP give "full and fair consideration" to a prisoner's request for nunc pro tunc designation)).

In this case, after Fields was admitted into a BOP facility, he initiated the process of requesting a nunc pro tunc designation. His request resulted in a final written decision from the BOP's Ian Connors. In his decision, Connors indicated that petitioner's request had been reviewed pursuant to BOP Program Statement 5160.05, the decision in Barden, and the factors set out in 18 U.S.C. § 3621(b).

Connors's decision did not mention the first § 3612(b) factor, the resources of the state facility at issue, but as respondent points out, that factor has no relevance in the context of a request for retroactive designation of a facility in which the prisoner is no longer incarcerated.[6] With respect to the second factor, the nature and circumstances of Fields's offenses, Connors listed petitioner's federal and state offenses, and then observed that "[a]ccording to [Fields's]

---

[6] Section 3621(b) covers not just retroactive designations, but also gives the BOP the authority to prospectively designate non-federal facilities as places where prisoners may serve their federal sentences. Obviously, the first § 3621(b) factor is relevant when the BOP is considering a request for a prospective designation.

Presentence Investigation Report, the instant offenses [i.e., Fields's federal and state offenses] are not related." Pet'r's Mem. of Law (doc. no. 1-1), at 7.  With respect to the third factor, Fields's history and characteristics, Connors described Fields's rather lengthy criminal history.  Finally, with respect to the fourth factor, statements by the court that imposed the federal sentence, Connors said this:

> [T]he sentencing court was contacted to obtain a statement regarding its position with respect to a retroactive designation on November 21, 2014. Ordinarily, the Bureau gives the Court 60 days to respond to the request.  No response has been received from the Court regarding the retroactive request and there is no indication [that] the Court has responded on the record via Pacer.

Id.  In the end, Connors denied Fields's request for nunc pro tunc designation.

Petitioner claims that the BOP's denial his request was an abuse of discretion.  He makes the following argument:

> [T]he BOP considered all relevant issues in a manner patently inconsistent with the rule established in Barden.  Fields asserts that because the federal sentence was imposed before the state sentence, and because the state sentence advised this petitioner that his sentence was to run concurrent with his federal sentence, a Barden designation is warranted.
>
> Thus, the BOP's refusal to effectuate a Barden designation of the facility where Fields served his state sentence between April 6, 2009 and May 15, 2014, as a place where he served his federal sentence is an abuse of discretion.

Pet. (doc. no. 1), at 8.

17

Petitioner's argument is that the BOP abused its discretion by failing to give life to the state trial judge's instruction that the sentence he imposed should be served concurrently with Fields's federal sentence.  However, in Eccleston v. United States, a case Fields cites in his petition, the court pointed out that in Barden, another case on which Fields relies, it had "noted that neither the federal courts nor the BOP are bound in any way by [a] state court's instruction that the state and federal sentences were to run concurrently."  390 F. App'x 62, 64 (3d Cir. 2010) (per curiam) (citing Barden, 921 F.2d at 478 n.4; U.S. Const. art. VI, cl. 2)); see also Abdul-Malik v. Hawk-Sawyer, 403 F.3d 72, 75 (2d Cir. 2005) ("The state sentencing court did specify that the state sentence should run concurrently to the federal sentence.  However, such a determination is not binding on federal authorities.").  Because the state judge's determination was not binding on the BOP, the BOP's decision not to grant Fields's request for a nunc pro tunc designation to bring about the state judge's desired result was not an abuse of discretion.  Beyond that, it is apparent to the court that the BOP assessed the applicable statutory factors and gave Fields's request a "full and fair consideration," Taylor, 284 F.3d 1149.  Accordingly, as to petitioner's claim that the BOP abused its discretion when it denied his request for a nunc

18

pro tunc designation, respondent is entitled to judgment as a matter of law.

In his objection to respondent's motion for summary judgment, petitioner notes that the BOP never received a response from the federal sentencing judge and asks this court to remand his request to the BOP so it can try again to get a statement from the sentencing judge.  If 18 U.S.C. § 3621(b) required the BOP to get a statement from the federal sentencing judge before acting on a request for a nunc pro tunc designation, or if the statute required the sentencing judge to provide such a statement, then the BOP would have abused its discretion by denying Fields's request without receiving a statement from the sentencing judge.  But § 3621(b) imposes no such requirements.  Rather, it requires the BOP to consider five factors including "any statement by the court that imposed the sentence."  18 U.S.C. § 3621(b)(4).  The clear meaning of the statutory language is that the BOB must consider a statement by the sentencing court if the sentencing court has made such a statement.  Here, there was no such statement, the BOP considered the other statutory factors, and it did not exceed the scope of its considerable discretion when doing so.  No more was required.

## Conclusion

For the reasons described above, respondent's motion for summary judgment, document no. 15, should be granted.

Any objection to this report and recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file an objection within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Andrea K. Johnstone
United States Magistrate Judge

June 26, 2017

cc:   Salwillel W.T. Fields, pro se
      Seth Aframe, Esq.